MEDLAR and another, executors of MEDLAR, *against* AU-LENBACH and wife.

IN ERROR.

By the act of the 19th April, 1794, the widow of an intestate has a lien on the lands taken at the apprasement in the Orphans' Court for the value of her purpart, the interest of which is to be paid to her during her natural life. Of this lien the Orphans' Court cannot deprive her. This lien, as to such purpart is extended to the heirs who are entitled to their proportions of it after her death; and in this respect there is a distinction between the purpart of the widow, and the shares of the heirs in the residue of the value. When, therefore, upon a decree of the Orphans' Court, adjudging the land of an intestate to his eldest son, a bond was taken with surety to the heirs, conditioned to pay their respective shares, and also to pay their proportions of the widow's purpart at her death, and a mortgage was afterwards taken of the land, conditioned to pay the heirs their shares, exclusive of the widow's purpart, upon which the premises were sold, and purchased in by the heirs; it was held in a suit upon the bond so given, that taking the bond did not extinguish the lien, and that by the purchase of the mortgaged premises on which it was a charge, the lien was merged, and no recovery could be had on the bond.

WRIT of error to the Court of Common Pleas of *Berks* county. An action of debt was brought by *Daniel Aulenbach* and wife, against the plaintiffs in error, who were defendants below, upon a bond given by *Jacob Albright, David Medlar, Abraham Kœnig* to *Catharine Albright*, the wife of *Aulenbach*, conditioned for the payment of £166. 13. 4, in one year after the date thereof, and the further sum of £83. 6. 8, immediately after the death of the widow of *Jacob Albright*, deceased. The widow of said *Jacob Albright*, died on the 3d of June, 1828.

*Jacob Albright* died intestate, leaving a widow and issue three children, to wit: *Jacob, Catharine* and *Elizabeth*. The real estate of the intestate was valued at the sum of £750, and taken at the valuation by the said *Jacob Albright*, agreeably to the intestate laws of Pennsylvania, and the said *David Medler* and *Abraham Kœnig* were approved of as his sureties, in the Orphans' Court. The bond upon which this suit is founded, was taken for *Catharine's* distributive share in the said real estate. A mortgage of the same land was given by the said *Jacob Albright* to *Daniel Aulenbach*, intermarried with *Catharine*, and *John Spayd*, intermarried with *Elizabeth*, for £882, conditioned for the payment of £241 to *Daniel Aulenbach*, and £200 to *John Spayd*, with interest from date. The said mortgage was taken for the two-third parts of the said *Daniel Aulenbach* and *John Spayd's* wives' distributive shares in the real estate of the said *Jacob Albright*, deceased,

(Medlar and another *v.* Aulenbach and wife.)

leaving the one-third due at the decease of the widow, exactly as it stood prior to the taking of said mortgage. A *scire facias* issued on said mortgage, upon which judgment was entered, and a *levari facias* was issued, and the property was sold to *Christian Leinbach,* for $1205, who assigned his deed from the sheriff to *Aulenbach* and *Spayd. Aulenbach* and *Spayd* took possession, which they have held to the present time.

The Court of Common Pleas, after stating the facts of the case, charged the jury that upon the valuation of an intestate's estate, when no recognizances, are taken, and bonds only are given to secure the payment of the distributive shares to the heirs, those shares are not a lien under the act of assembly upon the land of the estate; that the recommendation of the Supreme Court to take recognizances in order to create a lien, precludes the idea that a sufficient lien and security existed under the act of assembly in favor of the heirs generally. But it is contended that the one-third of the valuation of an intestate's estate, which is payable to the heirs upon the death of the widow is, by the act of assembly, made a charge upon the land, and stands upon different ground from the other portions of the distributive shares. No construction has been given to this clause of the act of assembly, nor is any practice shown under it; but in the present case it is the opinion of the court, that the acceptance of bonds with security for the payment of the share in question upon the death of the widow, was a waiver by the heirs of any charge upon the land created by the act of assembly, and that after the acceptance of the bonds with security the only remedy of the heirs was upon the bonds. And that the mortgage taken by the heirs upon the land to secure the balance due upon their shares payable before the death of the widow, and the proceedings thereon and sale by the sheriff, and purchase by the plaintiffs, and other facts given in evidence by the defendants, will not affect the legal right of the plaintiffs to recover upon this bond, unless the jury shall find that the plaintiffs took the land subject to the payment of their shares, due on the death of the widow, or under an agreement to receive the land in satisfaction of their shares. To which opinion of the court, the counsel of the defendants except, and request the court to file the same, which is done accordingly.

The jury found a verdict for the plaintiff, upon which judgment being entered the defendant took this writ of error, and assigned the following errors:

1. The court erred in charging the jury, that the one-third of the valuation of an intestate's estate, which is payable to the heirs upon the death of the widow, when bonds with security are given, to secure the distributive shares, is not a lien and charge upon the land under the intestate laws.

(Medlar and another *v.* Aulenbach and wife.)

2. The court erred in stating to the jury, that the acceptance of bonds with security for the payment of the share in question upon the death of the widow, was a waiver by the heirs of any charge upon the land, created by the act of assembly.

3. The court erred in stating, that after the acceptance of such bonds with security, the only remedy of the heirs was upon the bonds.

4. The court erred in stating to the jury, that the mortgage taken by the plaintiffs upon the land to secure the balance due upon their shares, payable before the death of the widow, and the proceedings thereon, and sale by the sheriff, and purchase by the plaintiffs, and other facts given in evidence by the defendants, will not affect the legal right of the plaintiffs to recover upon this bond, unless the jury shall find that the plaintiffs took the land subject to the payment of their shares due upon the death of the widow, or under agreement to receive the land in satisfaction of their share.

*Heister* for the plaintiff in error.

The language of the act of the 19th April, 1794, 22d section, as to the sum at which the purpart or share of the widow shall be valued, is, that "the same, together with the interest thereof, shall be and remain charged upon the premises." This plainly imports a lien which has not been waived.

The decree of the Orphans' Court, and the bond taken in pursuance of it, cannot have this effect. Where the estate is not divided, it is not usual for any other than the heir, who takes the estate, to attend when the proceedings are confirmed and the decree made. It would be therefore unjust to give this effect to those proceedings, and without the consent of the heirs, to deprive them of the lien on the land created by the positive terms of the act of assembly. Taking the bond, was authorized by the act, and the practice of doing so is declared to be improper. *Walton* v. *Willis*, 1 *Dall.*, 265. At all events, it does not affect the widow's purpart. *Kean* v. *Franklin*, 5 *Serg. & Rawle*, 155.

The terms of the act of assembly are imperative; *non user*, nor any practice inconsistent with it, cannot repeal it. *Wright* v. *Crane*, 13 *Serg. & Rawle*, 447.

The bond must have been given after the decree, which by force of the act of assembly created the lien. It was a security of an inferior grade, and taking a security of an equal or inferior grade, does not extinguish the first security.

Where the defendant receives the fund out of which the debt is to be paid, the debt is thereby extinguished. 2 *Com. D. tit. Chancery*, *p* 758. *Chandas* v. *Talbot*, 2 *P. Will.* 604. *Purvi-*

*ance* v. *Lemon*, 16 *Serg. & Rawle*, 292.    Here, then, by purchasing the land on which the share of the plaintiff's wife was charged, the debt for which the bond was given, was merged.

*Baird* for the defendant in error.

The sureties cannot deny their bond, and by that bond they are bound to pay the plaintiff the amount claimed in this suit.    It is not the case of a stranger, denying the effect of the decree of the Orphans' Court, but of those who were parties to it, who undertake to deny the import of the condition of the bond which they gave upon that decree.

A person may waive a lien given him to secure a debt, and he contended that taking the bond here, was a waiver of the statutory lien.    If the land had gone into the hands of a stranger, it would not be pretended that the surety was not liable on the bond, and in equity, the present case could not be distinguished from that.    But this bond was not given to the widow, as to whom it is contended a lien exists; but it was given to the heirs for the payment of their shares at her death.    He likened this to the case of a servant, who by the act of assembly, has a preference out of the assets of a deceased debtor, which is extinguished by taking a single bill for his wages, payable at a future day.    *Silver* v. *Williams*, 17 *Serg. & Rawle*, 292.

The opinion of the court was delivered by

Rogers, J.—In the act of the 19th April, 1794, the legislature has provided, "That when the whole premises shall be adjudged to the eldest son, or any of the children, the purpart of the widow shall be valued, and the same, together with the interest, shall remain, charged on the premises; the interest to be paid annually, and at her decease, the principal sum to be distributed, and divided among the children and representatives of the intestate." The Orphans' Court of *Berks* county, in accordance with the directions of the act adjudged the real estate of the intestate, to his eldest son, and ordered the bond to be executed, which has give rise to this controversy.    That the sum at which the widow's share was appraised, is a lien on the premises, it is impossible to doubt; nor do I understand the Court of Common Pleas, to deny this proposition.    In the 22d section, it is enacted that when the widow is living, and the whole premises shall be adjudged and ordered to the eldest son, or any of the children, the wife of the person so deceased, shall not be entitled to the sum, at which her purpart, or share of the estate, ordered to the eldest son, or any of the children shall be valued, but the same together with the interest,

(Medlar and another *v.* Aulenbach and wife.)

shall be and remain charged upon the premises, and the interest thereof, shall be annually and regularly paid by the eldest son, to be recovered by such mother, by distress or otherwise, as rents in this commonwealth are usually recovered, during her natural life, which provision the said mother shall accept and receive in lieu, and full satisfaction for her dower, at common law.  As the legislature have thought proper, in introducing a new system, to divest the right given her by the common law, they have, at the same time, taken effectual care of her interest, by creating a statutory lien, to the extent of the value of the purpart, which together with the interest, is to remain charged on the premises: and as the death of the widow may occur at an indefinite period of time, they have also extended the lien to the heirs and legal representatives; in this respect, making a distinction between the purpart of the widow and the share of the heirs of the intestate.    Nor do the cases cited, *Walton* v. *Willis*, 1 *Dal.* 265; *Kean.* v. *Franklin*, 5 *S. & R.*, 155, interfere with this construction.    In these cases, the court has reference to the purparts of the heirs, which are placed on a different footing from the share allotted to the widow. In *Walton* v. *Willis*, Chief Justice *McKean* condemns the practice of taking bonds, which, independent of the act, are a personal security, and recommends a recognizance by which the lands themselves would be bound for the payment of the distributive shares. And this is true as regards their purpart, as the act has left it discretionary with the court in these cases to take either real or personal security; but it is not true in respect to the widow's share, which is made a lien by the direction of the act, in language which it would be difficult to misapprehend, a security provided for her, of which the court, even if they had so intended, cannot deprive her. The court of Common Pleas decided that the acceptance of the bond, with security for the payment of the share in question, after the death of the widow, was a waiver by the heirs of any charge on the land, created by the act of assembly, and that after the acceptance of the bond, with security, the only remedy for the heirs, was upon the bond.    In this opinion, we cannot concur.    As I before intimated, I do not look upon this proceeding as the act of the party, but I view the bond, as taken in pursuance of a decree of the court.    Nor is there in this particular, any difference between the rights of the widow and the heirs.    The act places them in the same situation for the reason which has been before given.    The heirs could not do otherwise than accept the bond after the decree.    It would not be in the power of the court to divest the lien of the widow and heirs in the teeth of an act so express as the present, and it seems to me, it is not using them fairly in supposing they had any such intention.    In the bond, which

46

(Medlar and another *n.* Aulenbach and wife.)

in the absence of all proof to the contrary, I take to be the act of the court, it is said that upon its sealing and delivery, the said *Jacob Albert,* should hold and enjoy the real estate, valued to him, his heirs and assigns forever, *according to law, &c.*

We must then refer to the act of 1794, to ascertain the title to the premises, by which it is clear that *Jacob Albert* acquires an estate in fee-simple, subject however to the widow's dower or purpart, the interest to be paid to her annually as rents, and the principal to the heirs and legal representatives after her death. But it is said, the acceptance of the bond with *security,* is a waiver of the lien, but I cannot perceive how this result can be produced under the circumstances, particularly, if the acceptance of the heirs, is in conformity to a decree of the court requiring security; so far from indicating any intention to part with the lien, it is in its nature cumulative; for as a matter of precaution, it may sometimes be the duty of the court to order additional security to guard against accidents, from fire or other casualties.     To take from the widow and heirs, a real security created for their benefit, would require much more unequivocal evidence of intention, than is disclosed in the circumstances here presented; for if this is to be resolved into a question of intention, it might be difficult to prove, that by adopting this form, rather than a recognizance, the parties intended to relinquish any right given by the statute.

Judgment reversed, and *venire de novo* awarded.